486 A.2d 428

**COMMONWEALTH of Pennsylvania**

v.

**Michael William McGINNIS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 19, 1984.

Filed Dec. 14, 1984.

Reargument Denied Jan. 24, 1985.

602

604

John F. Goryl, Carlisle, for appellant.

Theodore B. Smith, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

WIEAND, Judge:

Michael W. McGinnis was tried by jury and was found guilty of driving a vehicle while under the influence of alcohol in violation of 75 Pa.C.S. § 3731(a)(1). On direct appeal, McGinnis contends (1) that the evidence was insufficient to support the verdict; (2) that the result of a breathalyzer test should have been suppressed because the police lacked probable cause to arrest; (3) that the result of the breathalyzer test was inadmissible because the breathalyzer used was not properly shown to be accurate and the trial court should not have taken judicial notice that the breathalyzer was an approved device; and (4) that the trial court erred in failing to instruct the jury on the provisions of 75 Pa.C.S. § 3731(a)(4) which make it an offense to drive a

vehicle while the operator's blood alcohol content is .10% or greater. We affirm the judgment of sentence.

On February 16, 1983, at or about 5:00 a.m., in Carlisle, Cumberland County, McGinnis drove his vehicle over a fire hose in such a manner that the undercarriage hooked a coupling of the hose and dragged the hose along the street until McGinnis was stopped by fire police. When Carlisle police requested McGinnis to produce his operator's license and owner's card, he became abusive and swore at the police. The police officers detected an odor of alcohol on McGinnis' breath, observed that his eyes were bloodshot and glassy, and noted that he fumbled through his wallet before producing the cards requested. When he was told that he was under arrest for driving while under the influence of alcohol, McGinnis began screaming and making gestures toward the police. He said that he was going to leave and attempted to enter his car but was restrained by police who placed handcuffs on him and took him to the police station. A breathalyzer test showed a blood alcohol content of .14%.

"The test of the sufficiency of the evidence in a criminal case is whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the [crime] charged beyond a reasonable doubt." *Commonwealth v. Carter*, 329 Pa.Super. 490, 495–496, 478 A.2d 1286, 1288 (1984). The facts proved by the Commonwealth in this case were sufficient to support the jury's finding that McGinnis had driven a vehicle while under the influence of alcohol to a degree which rendered him incapable of safe driving in violation of 75 Pa.C.S. § 3731(a)(1).

Although McGinnis had also been charged with a violation of 75 Pa.C.S. § 3731(a)(4), in a second count of the information, the trial court instructed the jury that McGinnis could be found guilty only if he drove a vehicle while

under the influence of alcohol to a degree which rendered him incapable of safe driving. McGinnis did not object to the jury instructions regarding the omission of a charge on § 3731(a)(4) despite an opportunity to do so. Therefore, this issue has been waived. See: *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). McGinnis' failure to object is understandable. The jury instructions were more favorable to the defense than the defense was entitled to receive.[1]

■ There is no merit in McGinnis' argument that the police lacked probable cause to arrest him. The trial court's ruling on this issue was fully reviewed in the opinion of the court en banc, and our review of the record fails to disclose error.

The most interesting issue raised by appellant pertains to the admissibility of the result of the breathalyzer test. The Commonwealth introduced evidence at trial through Carlisle patrolman Ronald Egolf that the breathalyzer used by the police had been a Smith and Wesson Breathalyzer, Model 1000. The Commonwealth then requested the trial court to take judicial notice that the breathalyzer was an approved device. Defense counsel stated that he would defer an objection until after further testimony had been introduced. Therefore, the trial court took judicial notice that the Smith and Wesson unit had been approved by the Department of Health and received the results of the test. The .14 reading was thus placed before the jury without objection. During cross-examination of Egolf, however, defense counsel was able to show that the approved breathalyzer unit had been modified. He then objected for the first time to evidence which had already been placed before the jury.

■ A breathalyzer device uses scientific principles of chemistry to determine the percentage of alcohol present in

1. In fact, it was the Commonwealth which objected and called this omission to the attention of the trial judge. Expressing doubt about the constitutionality of 75 Pa.C.S. § 3731(a)(4), the trial judge refused to allow appellant to be convicted unless he were found to have been under the influence of alcohol to a degree which rendered him incapable of safe driving.

a person's breath which, in turn, discloses the amount of alcohol in the person's blood.[2] McCormick, *Handbook of the Law of Evidence* § .209 (2d ed. 1972). Generally, the admissibility of scientific evidence depends upon a proper foundation sufficient to show that the scientific data is reliable. See: *Commonwealth v. Butler*, 213 Pa.Super. 388, 392, 247 A.2d 794, 796 (1968); *Commonwealth v. Dilworth*, 179 Pa.Super. 64, 67–68, 115 A.2d 865, 866–867 (1955); McCormick, *supra* at §§ 203, 209. The proponent must persuade the court that the probative value of the test result outweighs any danger that it will confuse or mislead the jury.

■■■ In Pennsylvania, the legislature has provided by statute that the amount of alcohol in a person's blood as shown by a chemical test of that person's breath, blood, or urine, which test was conducted by a qualified person using approved equipment, is sufficiently reliable to be admissible in a criminal proceeding. 75 Pa.C.S. § 1547(c). Chemical tests are an attempt to put objectivity and certainty into an otherwise highly subjective area of the law. Comment, *The Drinking Driver: An Approach to Solving a Problem of Underestimated Severity*, 14 Vill.L.R. 97, 102 (1968). The statute requires, however, that the tests be conducted by devices approved by the Department of Health. 75 Pa.C.S. § 1547(c)(1). A list of approved testing devices is contained in the Pennsylvania Code at 67 Pa.Code § 77.2 and 28 Pa.Code § 5.102. If a device is there listed, a court may properly take judicial notice that it is an approved device. See: *Unangst's Appeal*, 333 Pa. 489, 495, 5 A.2d 201, 204 (1939); *Harbor Marine Co. v. Nolan*, 244 Pa.Super. 102, 104 n. 2, 366 A.2d 936, 937 n. 2 (1976); *Commonwealth v. Slider*, 229 Pa.Super. 93, 96, 323 A.2d 376, 378 (1974); 31 C.J.S. *Evidence* § 14 (1964).

2. The amount of alcohol in the brain determines the extent of intoxication. McCormick, *Handbook of the Law of Evidence* § 209 (2d ed. 1972). Measuring the amount of alcohol in a person's breath, blood, or urine is a substitute for the analysis of brain tissue. *Id.*

The Smith and Wesson Breathalyzer, Model 1000, is an approved testing device. In this case, however, the Smith and Wesson Breathalyzer, Model 1000, used to test the alcoholic content of appellant's blood had been *modified* prior to use. There was no evidence that the Smith and Wesson device, as modified, had been approved by the Department of Health. Nevertheless, as we have already observed, the result of the test administered to appellant was received in evidence without timely objection.

Moreover, the fact that the requirements of the statute were not met did not automatically render the test result inadmissible. In the usual setting it would mean only that the Commonwealth would be required to establish an alternate foundation by showing that the test actually administered was sufficiently reliable to permit the results to have probative value. Cf. *Commonwealth v. Gotto*, 306 Pa.Super. 434, 442 n. 8, 452 A.2d 803, 807 n. 8 (1982) (test result admissible where device used was approved prior to trial, but after test conducted). Accord: *Commonwealth v. Benson*, 280 Pa.Super. 20, 31, 421 A.2d 383, 389 (1980). Compare: *Commonwealth v. Boerner*, 268 Pa.Super. 168, 172, 407 A.2d 883, 885 (1979), *appeal dismissed*, 491 Pa. 416, 421 A.2d 206 (1980). In this case, the Commonwealth showed that the device used to test appellant had been tested for accuracy sixteen days before use. Moreover, after the trial court rejected defense counsel's belated objection, the defense called as an expert witness a former employee of Guth Laboratories, the manufacturer of the Smith and Wesson Breathalyzer. This witness testified, inter alia, that a breathalyzer unit modified in the manner in which the unit used to test appellant had been modified would produce an accurate result.

Under these circumstances, there is no basis on which to reverse the trial court's denial of the motion for new trial. Appellant was given a fair trial and the rules of evidence were correctly applied. The judgment of sentence, therefore, will be affirmed.

Affirmed.