993 So.2d 1000 (2007)
Leo ZARBA, a/k/a Leo Albert Zarba, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-832.
District Court of Appeal of Florida, Second District.
November 16, 2007.
James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Leo Zarba pleaded nolo contendere to driving while his license was revoked (habitual traffic offender), a third-degree felony. § 322.34(5), Fla. Stat. (2006). Mr. Zarba reserved the right to appeal the circuit court's denial of his dispositive motion to suppress his statements and the other evidence obtained after a traffic stop. A police officer had stopped Mr. Zarba because one of the three brake lights on the vehicle he was driving was not working. The evidence presented at the hearing on Mr. Zarba's motion to suppress established that two of the vehicle's three brake lights illuminated when Mr. Zarba depressed the brake pedal. Because this evidence was sufficient to demonstrate compliance with the applicable statute, the traffic stop was unlawful and the circuit court should have granted the motion to suppress. Accordingly, we reverse the judgment and sentence imposed on Mr. Zarba.

The Facts
Shortly before midnight on November 11, 2006, Officer Kevin Sweat of the Haines City Police Department was on routine patrol behind a 1995 Ford Explorer driven by Mr. Zarba. Officer Sweat observed that the Explorer's right rear brake light was not working, and he *1001 stopped Mr. Zarba. Further investigation revealed that Mr. Zarba's driver's license had been revoked, and Officer Sweat placed him under arrest.
At the hearing on the motion to suppress, Officer Sweat explained that he had stopped Mr. Zarba because the Explorer's right rear brake light was not working. Notably, Officer Sweat did not testify that this deficiency rendered the vehicle in such an unsafe condition that its continued operation endangered any person or property.
When Officer Sweat made the traffic stop, Mr. Zarba had been accompanied by a passenger, Michael Zemaitis. At the hearing on the motion to suppress, Mr. Zemaitis testified that the Explorer was equipped with three brake lights: one at the left rear of the vehicle, one at the right rear of the vehicle, and a center high-mounted stop lamp.[1] Mr. Zemaitis testified further that he had accompanied Mr. Zarba to the impound lot to reclaim the vehicle. After the vehicle was released, the two men tested the brake lights and determined that both the left rear brake light and the center high-mounted stop lamp illuminated when the brake pedal was depressed. Only the right rear brake light was not working. Mr. Zemaitis testified that on the night of the traffic stop, two of the vehicle's three brake lights were working.

The Authority of State v. Burger

In State v. Burger, 921 So.2d 847 (Fla. 2d DCA 2006), this court had occasion to consider a case with strikingly similar facts. In Burger, sheriff's deputies stopped the defendant because one of the two brake lights on the left and right sides of the vehicle's rear was not working. Id. at 848. However, both the other brake light on the vehicle's rear and the center high-mounted stop lamp were operating. Id. This court held that if two of the vehicle's three brake lights were operational, this was sufficient to comply with the requirements of section 316.222(1), Florida Statutes (2004). Burger, 921 So.2d at 848. We explained our decision by noting that the statute requires a vehicle to be equipped with two or more stop lamps. Id. Therefore, since the vehicle in the Burger case had two operational brake lights, it complied with the statute. Id. We specifically noted that "[t]he statute does not require that the operable lights be parallel to one another but only that they be located in the rear of the vehicle." Id. Finally, we observed that if the Florida legislature wished to do so, it could amend the statute to require that when a vehicle is equipped with three stop lamps, all three of them must be operational. Id. at 849. To date, the legislature has not seen fit to amend the statute.

The Proceedings in the Circuit Court
At the hearing on the motion to suppress, Mr. Zarba's counsel noted the "undisputed evidence" that two of the vehicle's three brake lights were working at the time of the traffic stop and argued that the authority of this court's decision in Burger required the suppression of the evidence obtained following the traffic stop. The prosecutor countered this argument by citing a decision from the Third District, State v. Perez-Garcia, 917 So.2d 894 (Fla. 3d DCA 2005). The prosecutor argued that even if Mr. Zarba's vehicle was in compliance with section 316.222(1)the statute requiring "[e]very motor vehicle... [to] be equipped with two or more stop *1002 lamps"the traffic stop was lawful under section 316.610. The latter statutewhich addresses vehicle safety and inspections provides, in pertinent part:
It is a violation of this chapter for any person to drive ... on any highway any vehicle ... which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter....
(1) Any police officer may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of the vehicle to stop and submit the vehicle to an inspection and such test with reference thereto as may be appropriate.
§ 316.610 (emphasis added). The prosecutor argued that Burger did not address whether section 316.610 applied to a vehicle that had two operating stop lamps and one that was inoperable but that the Third District had addressed this issue in Perez-Garcia. In that case, the Third District held on similar facts that an officer could stop a vehicle with an inoperative left rear brake light under the authority of section 316.610(1) even though the vehicle had a functioning right rear brake light and a center high-mounted stop lamp. Perez-Garcia, 917 So.2d at 896-97.
In its written order denying the motion to suppress, the circuit court made no reference to this court's decision in Burger. Instead, the circuit court identified section 316.610(1) as the basis for its finding that the stop of Mr. Zarba's vehicle was lawful. The circuit court cited Perez-Garcia as authority for this conclusion.

The Parties' Arguments
On appeal, Mr. Zarba argues that the circuit court should have followed Burger and granted the motion to suppress. The State contends that the traffic stop was lawful under section 316.610(1). However, the State implicitly acknowledges the conflict between the Third District's approach in Perez-Garcia and this court's decision in Burger. The State asserts that "Burger was wrongly decided and should be reconsidered."

Discussion
The Third District's opinion in Perez-Garcia cited this court's decision in Hilton v. State, 901 So.2d 155 (Fla. 2d DCA 2005) (en banc) (Hilton I) (upholding a law enforcement officer's authority to stop a vehicle under section 316.610(1) based on observable damage to the windshield). Relying in part on Hilton I, the Third District concluded that it was not required to determine "whether a left-rear brake light is statutorily required." Perez-Garcia, 917 So.2d at 897. Instead, it found that the "well-reasoned authority from [its] sister courts" provided support for its conclusion that "a vehicle traveling the highway with an inoperable brake light is a vehicle in an `unsafe condition'" because such a vehicle "by definition `lack[s] equipment in proper condition and adjustment as required in chapter 316.'" Id. at 896-97 (citing Hilton I, 901 So.2d at 162).
We disagree with our sister district's conclusion for two reasons. First, all of the authorities cited in Perez-Garcia address instances of damages, disrepair, and missing equipment that presented arguable violations of the traffic codei.e., a car pulling a trailer that had no taillights or license plate, an inoperable brake light and taillight, and an inoperable turn signal. Id. at 897. Second, the Supreme Court of Florida recently quashed Hilton I in Hilton v. State, 961 So.2d 284 (Fla. *1003 2007) (Hilton II). The supreme court specifically rejected our en banc majority's interpretation of section 316.610 in Hilton I, reasoning that "for a stop to be constitutional under the `not in proper adjustment or repair' section of 316.610(1), the equipment defect or damage must be in violation of the law." Hilton II, 961 So.2d at 290 (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). The Hilton II court concluded that to be in violation of the law, "a cracked windshield violates section 316.610 only if it renders the vehicle in `such unsafe condition as to endanger any person or property.'" Id. at 286. The supreme court summarized:
[A]n officer may stop a vehicle for a windshield crack only if the crack poses a safety hazard. An officer is not authorized under section 316.610 to stop a vehicle for just any windshield crack under the "not in proper adjustment or repair" provision of subsection (1).
Id. at 290. Thus Hilton II not only rejects our en banc majority's interpretation of section 316.610 in Hilton I, but it also implicitly disapproves the reasoning of the Third District in Perez-Garcia. But cf. Hilton II, 961 So.2d at 302 (Pariente, J., concurring) (contrasting the differing safety risks posed by the inoperable brake light in Perez-Garcia with the cracked windshield in Hilton I and Hilton II).
Guided by the teaching of our supreme court in Hilton II, we may frame the two dispositive questions in Mr. Zarba's case as follows: (1) whether the inoperable right rear brake light was a violation of law or, alternatively, (2) whether the inoperable right rear brake light rendered Mr. Zarba's vehicle in such unsafe condition that it endangered either persons or property. Burger answers the first question. A single nonworking rear brake light on a vehicle equipped with three brake lights does not constitute a violation of the law because section 316.222(1)[2] requires only two functional brake lights on the vehicle's rear. Burger, 921 So.2d at 848. The statute does not require those brake lights to be parallel, nor does it require all three brake lights to be operative on a vehicle equipped with a center high-mounted stop lamp. Id. at 848-49.
Our approach to the second question differs from the approach of the Third District in Perez-Garcia. Unlike our sister district, we are unwilling to assume that having only two of three brake lights working creates a safety hazard that endangers persons or property when the statute only requires that two rear "stop lamps" display "a red or amber light ... upon application of the service (foot) brake." See §§ 316.222(1), 316.234(1). And in Mr. Zarba's case, the State presented no evidence and made no argument at the hearing on the motion to suppress that the condition of Mr. Zarba's vehicle posed a safety hazard. Therefore, we conclude that the officer's traffic stop of Mr. Zarba's vehicle was unlawful.

Conclusion
We take this occasion to remind the circuit court that in the event of a conflict between a decision of this court and a decision by one of our sister district courts, the circuit court lacks the authority to choose which decision it will follow. Instead, the circuit court is obliged to follow this court's decision until such time as the supreme court overrules it, we recede from it en banc, or the Florida legislature changes the law. See Parham v. Balis, *1004 704 So.2d 623, 625 (Fla. 2d DCA 1997), approved on other grounds, Musculoskeletal Inst. Chartered v. Parham, 745 So.2d 946 (Fla.1999); Wood v. Fraser, 677 So.2d 15, 18-19 (Fla. 2d DCA 1996).
For the reasons outlined above, the circuit court erred in denying Mr. Zarba's motion to suppress. Accordingly, we reverse Mr. Zarba's judgment and sentence. We certify direct conflict with the Third District's decision in Perez-Garcia.
Reversed; conflict certified.
CASANUEVA and CANADY, JJ., Concur.
NOTES
[1] Center high-mounted stop lamps have been standard equipment on all new passenger cars sold in the United States since the 1986 model year and on all new light trucks since the 1994 model year. See http://www.dot.gov/affairs/1998/nht1698.htm (site last visited October 25, 2007). The Ford Explorer driven by Mr. Zarba was a 1995 model.
[2] Section 316.222(1) refers to further detailed requirements for brake lights under section 316.234(1).