DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**HOA VUONG, MARK PEBLEY, ROBERT McKENNA, PETER MURPHY, JULIO REINA, RHONDA SIMMONS, ZACHARY SCUDERI, CHARLES ROLLO, NICOLLE MAHADY, JASON FEINSOD, ALAN HERNANDEZ, ROSLYN HOECKER, MARY BARUCH, ANA BLUMENFELD, DANIEL KING, LEO CORDERY, BEATRIZ VALLEJO, MINA ARBUCKLE, MELISSA HARTMAN, MARY DISCHINO, DEANNE ARCODIA, CHRISTINA WLODARCZYK, DONALD KEHR, JONATHAN NOLLI, MARKUS STUMPER, ISMAEL OLIVAN RODRIGUEZ, DANIELLE VERGA, KATHRYN MURPHY, DAVID CORNELL, NICKOLAS LONG, LINDSEY GABOFF, PATRICK MURPHY, DUSTIN WALKER, JEFFREY TYSON, JAMES PASA, CATHERINE HAMPTON, LUIS CRUZ, DANIEL CHAN-PAREDES, ANTONIO FONROSE, ANNA BERGMAN, ANNA YURTAYEVA**, on behalf of themselves and other Palm Beach County DUI Defendants,
Appellants,

v.

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT,**
Appellee.

No. 4D13-2199

[October 22, 2014]

Appeal from the State of Florida, Division of Administrative Hearings; L.T. Case No. 12-3898 RX.

Brian P. Gabriel of Gabriel & Gabriel, LLC, Jupiter, for appellants.

Ann Marie Johnson, Tallahassee, for appellee.

STEVENSON, J.

The instant appeal arises from a chapter 120 rule challenge to Florida Administrative Code Rules governing the Florida Department of Law Enforcement's approval and oversight of breath test instruments. Appellants contended that the rules constitute an invalid exercise of delegated legislative authority. The administrative law judge (ALJ) rejected appellants' arguments. We affirm.

Appellants are individuals charged with DUI after submitting to a breath test on the Intoxilyzer 8000 breath instrument. Appellants submitted to a breath test pursuant to Florida's implied consent law. The implied consent law requires that drivers submit to an "approved" test. *See* § 316.1932(1)(a)1.a., Fla. Stat. (2012). The legislature has charged Florida's Department of Law Enforcement (FDLE) with responsibility for approving breath test instruments; for "regulation of the operation, inspection, and registration of breath test instruments utilized" under the driving under the influence statutes; and for promulgating rules necessary for the administration and implementation of its obligations. *See* § 316.1932(1)(a)2., Fla. Stat. (2012). Pursuant to the authority granted it, FDLE approved the Intoxilyzer 8000 for evidentiary use. *See* Fla. Admin. Code R. 11D-8.003(2).

Attempting to demonstrate the inadequacy of the rules, appellants presented evidence that, after the November 2002 amendment of rule 11D-8.003 approving the Intoxilyzer 8000 but before the Intoxilyzer 8000 was actually put into use in Florida, difficulties during testing prompted the manufacturer to determine it was necessary to drill a hole in the instrument's exhaust purge valve. The exhaust purge valve is utilized only during simulation testing and is not involved in an actual breath test. The Intoxilyzer 8000 instruments put into use in Florida come from the manufacturer with the hole drilled in the exhaust purge valve. FDLE did not "reapprove" the Intoxilyzer 8000. Appellants also presented evidence that, in 2007, there were documented problems with the calibration of the flow sensor on some instruments. Consequently, in late 2010/early 2011, FDLE began using a flow meter to test calibration of the flow sensor. Effective in 2011, FDLE's internal guidelines require calibration of the flow sensor as part of FDLE's annual inspection.

The gist of appellants' claims was that Florida Administrative Code Rules 11D-8.003, 11D-8.004, and 11D-8.006 are vague, do not provide sufficient guidelines or standards, and/or vest unbridled discretion in FDLE. Appellants complained that the rules do not require breath instrument manufacturers to provide FDLE notice of modifications to an already approved model of breath instrument; do not require FDLE to retest or reapprove breath instruments modified by the manufacturer; and do not set forth criteria or guidelines addressing the retesting or reapproval of modified instruments. They also complained of the rules' failure to specifically require or address inspection and/or calibration of the flow sensor on the breath instrument.

The burden of proving the invalidity of a challenged rule is on the

petitioner. *See* § 120.56(1)(e), (3), Fla. Stat. (2012). Having heard the evidence, the ALJ concluded petitioners had failed to meet this burden. With regard to the drilling of the hole in the exhaust purge valve, the ALJ found the evidence failed to establish the drilling of the hole affected breath test results "in any manner" or rendered the results unreliable. The ALJ similarly concluded the evidence was insufficient to establish that "the scientific reliability of reported breath test results is related to the function of an instrument's flow sensor" as "[t]he evidence establishes that the instrument will not report results of a breath alcohol test if the quantity of air provided by a test subject is insufficient."

Finding the ALJ's factual findings to be supported by competent, substantial evidence and no error in his legal conclusions, we affirm the order appealed. *See Volusia Cnty. Sch. Bd. v. Volusia Homes Builders Ass'n*, 946 So. 2d 1084, 1089 (Fla. 5th DCA 2006) (holding hearing officer's legal conclusions are reviewed de novo, while factual findings must be accepted if supported by competent, substantial evidence). Appellants' reliance on the decisions in *State v. Flood*, 523 So. 2d 1180 (Fla. 5th DCA 1988), *State v. Polak*, 598 So. 2d 150 (Fla. 1st DCA 1992), and *State v. Miles*, 775 So. 2d 950 (Fla. 2000), is not persuasive.

*Flood* and *Polak* were not rule challenges. In both cases, *police* modified the breath instrument and the trier-of-fact concluded the modification was "substantial" or rendered the instrument a "different machine." *See* 598 So. 2d at 153; 523 So. 2d at 1181. Here, the manufacturer made the decision to modify the Intoxilyzer 8000 before any instruments were put into evidentiary use in Florida, and the ALJ found the evidence failed to prove the complained-of deficiencies had impacted the reliability of the breath tests. *Miles* did hold that the rules governing DUI blood alcohol sampling were inadequate as they failed to contain any provisions addressing preservation of the blood sample pending testing, and all the experts agreed that proper preservation was essential to quality control. *See* 775 So. 2d at 955. Here, however, the significance of the drilling of the hole in the exhaust purge valve and calibration of the flow sensor was disputed, and the ALJ found the evidence failed to establish the complained-of deficiencies had any impact on the reliability of breath alcohol tests.

Having carefully reviewed the record and considered all arguments raised, the order on appeal is affirmed.

*Affirmed.*

WARNER and GERBER, JJ., concur.

3

*        *        *

*Not final until disposition of timely filed motion for rehearing.*